**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
Jacksonville Division**

| | |
|---|---|
| **CENTER FOR BIOLOGICAL DIVERSITY** and **NOKUSE EDUCATION, INC.,** | |
| *Plaintiffs*, | |
| v. | **Case No. 3:23-cv-936-WWB-LLL** |
| **U.S. FISH AND WILDLIFE SERVICE; MARTHA WILLIAMS**, in her official capacity as Director of the U.S. Fish and Wildlife Service; and **DEB HAALAND**, in her official capacity as Secretary of the U.S. Department of the Interior, | |
| *Defendants*. | |

**<u>DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO
SUPPLEMENT THE ADMINISTRATIVE RECORD (ECF No. 20)</u>**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

LEGAL STANDARD ......................................................................................... 3

ARGUMENT .................................................................................................... 4

   I. Plaintiffs Have Failed to Establish a Legal Basis for the Court to Look Beyond
    the Service's Administrative Record in this Case. ...................................... 4

   II. The Administrative Record Contains All the Information this Court needs
    to review the Service's Decision. ............................................................ 7

   III. If Any Clarification Is Deemed Necessary, It Should Come from the Service. ........ 9

CONCLUSION ................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**                                 **Page(s)**

*Ala.-Tombigbee Rivers Coal. v. Kempthorne*,
477 F.3d 1250 (11th Cir. 2007) ................................................................. 4

*Camp v. Pitts*,
411 U.S. 138 (1973) .................................................................... 3, 9, 10

*Citizens for Smart Growth v. Peters*,
No. 07-14122-CIV, 2008 WL 11331898 (S.D. Fla. Sept. 24, 2008) ............................ 6

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971) .................................................................... 3, 9, 10

*Coin Ctr. v. Yellen*,
No. 3:22-cv-20375-TKW-ZCB, 2023 WL 2889736 (N.D. Fla. Apr. 10, 2023) ....... 4, 5, 6

*Envtl. Def. Fund v. Costle*,
657 F.2d 275 (D.C. Cir. 1981) ................................................................. 7

*Fla. Power & Light Co. v. Lorion*,
470 U.S. 729 (1985) ......................................................................... 3

*Fund for Animals v. Rice*,
85 F.3d 535 (11th Cir. 1996) ................................................................. 3

*Marllantas, Inc. v. Rodriguez*,
806 Fed. Appx. 864 (11th Cir. 2020) ........................................................... 4

*Marsh v. Oregon Nat. Res. Council*,
490 U.S. 360 (1989) ......................................................................... 2

*Miccosukee Tribe of Indians v. United States*,
1998 WL 1805539 (S.D. Fla. Sept. 14, 1998) ................................................. 10

*Nat'l Mining Ass'n v. Sec'y, U.S. Dept. of Labor*,
812 F.3d 843 (11th Cir. 2016) .............................................................. 5, 6

*Organized Fishermen v. Franklin*,
846 F. Supp. 1569 (S.D. Fla. 1994) ........................................................... 4

*Pres. Endangered Areas of Cobb's Hist. v. U.S. Army Corps of Eng'rs*,
87 F.3d 1242 (11th Cir. 1996) ............................................................. 3, 4, 5

*San Luis & Delta-Mendota Water Auth. v. Jewell*,
   747 F.3d 581 (9th Cir. 2014) .................................................................................. 3, 7

*Sierra Club v. U.S. FWS*,
   No. 2:20-cv-13-SPC-NPM, 2021 WL 5634131 (M.D. Fla. Dec. 1, 2021) ..................... 4

*Sierra Club v. U.S. Forest Service*,
   535 F. Supp. 2d 1268 (N.D. Ga. 2008) ..................................................................... 10

*SOSS2, Inc. v. U.S. Army Corps of Eng'rs*,
   403 F. Supp. 3d 1233 (M.D. Fla. 2019) ...................................................................... 4

*W. Watersheds Project v. Kraayenbrink*,
   632 F.3d 472 (9th Cir. 2011) ..................................................................................... 3

**STATUTES**

5 U.S.C. § 706 ................................................................................................................ 3

**REGULATIONS**

50 C.F.R. § 424.14(c) ..................................................................................................... 9

**FEDERAL REGISTER**

87 Fed. Reg. 61 (October 12, 2022) ............................................................................... 1

## INTRODUCTION

There is no merit to Plaintiffs' contention that the Court would be incapable of undertaking its review of Plaintiffs' claims unless the U.S. Fish and Wildlife Service's ("Service") administrative record is supplemented with Plaintiffs' post-decisional, extra-record declaration. *See* ECF No. 20 (hereinafter "Mot."). Rather, Plaintiffs' Motion to Supplement the Administrative Record amounts to a blatant and improper attempt to bring in a contrary scientific opinion to attack the agency's analysis.

In this case, Plaintiffs challenge the Service's decision that listing the gopher tortoise (*Gopherus polyphemus*) as a threatened or endangered species is "not warranted" under Section 4 of the Endangered Species Act ("ESA"), 16 U.S.C. § 1533(b)(3)(B). *See* 87 Fed. Reg. 61,834 (Oct. 12, 2022).[1] In support of this decision, the Service reviewed the best available scientific and commercial information and compiled it in a Species Status Assessment Report ("SSA Report"). *See id.* Defendants certified the administrative record for the challenged decision, ECF Nos. 13-1, 19-1,[2] which includes the SSA Report and supporting information from Federal, state, academic, and private sources. Now, Plaintiffs seek to undermine a model used by the Service to analyze gopher tortoise future population viability (i.e., the population viability

---

[1] In the same decision, the Service confirmed that the Western distinct population segment of the gopher tortoise meets the definition of a threatened species and retains that status under the ESA. 87 Fed. Reg. at 61,834.

[2] On January 25, 2024, Defendants lodged the administrative record with a certification by an agency employee. ECF No. 13. Following discussions with Plaintiffs regarding the content of the administrative record, Defendants lodged a superseding amended administrative record on June 14, 2024, with an updated certification. ECF No. 19. All references in this brief correspond to the June 14 amended administrative record.

analysis or "PVA" model) with a post-decisional declaration that primarily offers opposing scientific opinions. ECF No. 20-1 (hereinafter "Shoemaker Decl.").

As Plaintiffs' Motion acknowledges, in cases like this one, courts may only look beyond the agency's administrative record in certain limited circumstances. Mot. at 6. Plaintiffs' invocation of the "technical terms or complex subjects need to be explained" exception fails for numerous reasons. *Id.* at 1, 5, 12-13. First, the Eleventh Circuit has never actually applied this exception. But even if the Eleventh Circuit did apply the technical explanation exception, Plaintiffs' declaration proffers a post-decisional opinion in favor of Plaintiffs' views on the merits, rather than objective technical clarification for the Court. Scientific disagreement with the Service's use of the PVA model does not entitle Plaintiffs to supplement the agency's administrative record. *See Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360, 378 (1989) ("When specialists express conflicting views, an agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive."). Finally, despite Plaintiffs' claim that this Court cannot understand the PVA model used by the Service without "advanced degrees and specialized expertise to review and explain it," Mot. at 11, the amended administrative record contains all the information this Court needs to review the Service's determination. If the Court decides that it does need further explanation, the proper source is the Service, not Plaintiffs. For these reasons, and as explained below, the Court should deny Plaintiffs' Motion to Supplement the Administrative Record.

**LEGAL STANDARD**

Judicial review of an agency action, including the one at issue in this litigation involving the ESA, is governed by the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, which sets forth specific limitations on both the standard and scope of review.[3] *See, e.g.*, *Fund for Animals v. Rice*, 85 F.3d 535, 541-42 (11th Cir. 1996). One of these limitations is that the scope of judicial review is limited to the administrative record. 5 U.S.C. § 706 (directing that in reviewing an agency action "the court shall review the whole record or those parts of it cited by a party"); *see also Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam) ("The focal point for judicial review [of agency action] should be the administrative record already in existence, not some new record made initially in the reviewing court."). Under the APA, judicial review "is to be based on the full administrative record that was before the [agency decision-makers] at the time [they] made [their] decision." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); *see also Pres. Endangered Areas of Cobb's Hist. ("P.E.A.C.H.") v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1246 (11th Cir. 1996). "[I]f the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course . . . is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).

---

[3] In a footnote, Plaintiffs take a different position on ESA claims. Mot. at 6 n.6 (citing *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 496 (9th Cir. 2011)). However, *Kraayenbrink* does not automatically permit consideration of extra-record materials for ESA claims. *See, e.g.*, *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 601, 603-04 (9th Cir. 2014) (opinion post-dating *Kraayenbrink* explaining ESA claims are reviewed pursuant to APA standards and evaluating whether expert declarations meet any of the narrow exceptions to record review rules). Regardless, the Court does not need to rule on whether ESA claims are limited to the administrative record to resolve Plaintiffs' Motion because Plaintiffs also allege APA claims.

In the Eleventh Circuit, a court is not "generally empowered" to go beyond the agency's administrative record and "should do so only where there is initially a strong showing of bad faith or improper behavior by the agency." *Ala.-Tombigbee Rivers Coal. v. Kempthorne*, 477 F.3d 1250, 1262 (11th Cir. 2007) (internal quotations omitted); *accord Marllantas, Inc. v. Rodriguez*, 806 Fed. Appx. 864, 867 (11th Cir. 2020) (per curiam) (same); *Coin Ctr. v. Yellen*, No. 3:22-cv-20375-TKW-ZCB, 2023 WL 2889736 (N.D. Fla. Apr. 10, 2023) (same); *Organized Fishermen v. Franklin*, 846 F. Supp. 1569 (S.D. Fla. 1994) (permitting limited discovery where plaintiffs argued bad faith). Although one Eleventh Circuit case referenced, in a footnote, four other exceptions recognized by the Ninth Circuit including a technical explanation exception, the Eleventh Circuit has never actually applied those other exceptions. *See P.E.A.C.H.*, 87 F.3d at 1246 n.1. Some district courts in the Eleventh Circuit have cited to this footnote, but none have applied those other exceptions to justify supplementing an administrative record with a plaintiff's expert declaration. *See, e.g., Sierra Club v. U.S. FWS*, No. 2:20-cv-13-SPC-NPM, 2021 WL 5634131 (M.D. Fla. Dec. 1, 2021) (citing *P.E.A.C.H.* footnote but finding none of the four exceptions were relevant or met); *SOSS2, Inc. v. U.S. Army Corps of Eng'rs*, 403 F. Supp. 3d 1233 (M.D. Fla. 2019) (same).

## ARGUMENT

### I. Plaintiffs Have Failed to Establish a Legal Basis for the Court to Look Beyond the Service's Administrative Record in This Case.

The only exception to the record rule that the Eleventh Circuit accepts to warrant supplementing an agency administrative record is where a plaintiff initially makes a "strong showing" that the agency acted in bad faith or improperly. *Ala.-Tombigbee Rivers Coal.*, 477 F.3d at 1262; *see also Marllantas*, 806 Fed. Appx. at 867. Plaintiffs'

Motion contains no such allegations. Thus, there is no legal basis for this Court to go beyond the Service's administrative record when reviewing the challenged action here.

The issue before this Court is nearly identical to the one before the Northern District of Florida in *Coin Center*, 2023 WL 2889736. There, plaintiffs challenged an agency action under the APA and attempted to supplement the agency's administrative record with a purported expert declaration. *Id.* at *1. *Coin Center* plaintiffs did not allege any bad faith or improper behavior by the defendants. Instead, they pointed to the Eleventh Circuit's footnote in *P.E.A.C.H.*, listing record review exceptions applied by the Ninth Circuit, and argued that their expert's declaration would be important to "explain[] technical terms and complex subjects relevant to the challenged agency action." *Id.* In the end, the district court correctly concluded that there is "no legal basis for the Court to go beyond the administrative record" because the plaintiffs had not made a showing of bad faith or improper behavior by the agency. *Id.*

This Court should make the same ruling as the *Coin Center* district court. Just as in *Coin Center*, Plaintiffs have challenged an agency action under the APA which will be resolved by cross-motions for summary judgment. And, just as in *Coin Center*, Plaintiffs attempt to use the footnote in *P.E.A.C.H.* to expand the scope of this Court's review to their expert's declaration, but do not allege any bad faith or improper behavior.

Plaintiffs' attempts to distinguish this case from *Coin Center* miss the mark. From a legal standpoint, Plaintiffs claim that the *Coin Center* ruling "disregards" the Eleventh Circuit's opinions in *P.E.A.C.H.* and *National Mining Association v. Secretary, U.S. Department of Labor*, Mot. at 9-10, but in fact the *Coin Center* court specifically reviewed both of those decisions. 2023 WL 2889736 at *2 (referencing *P.E.A.C.H.*, 87

F.3d at 1246 n.1 and *Nat'l Mining Ass'n v. Sec'y, U.S. Dept. of Labor*, 812 F.3d 843,

875 (11th Cir. 2016)). Having reviewed those decisions and others, the *Coin Center*

court accurately determined that the Eleventh Circuit has never actually recognized any

exception to the record review rule as justifying supplementation other than the

exception for bad faith or improper behavior by the agency. *Id.* (citing *Nat'l Min. Ass'n*,

812 F.3d at 875 ("We have acknowledged that various factors could be considered in

determining the propriety of reviewing extra-record material on review of an agency rule

. . . ; in practice, however, we generally have focused pointedly on whether the

petitioners have made a strong showing of bad faith or improper behavior by the

agency."); *Citizens for Smart Growth v. Peters*, No. 07-14122-CIV, 2008 WL 11331898,

at *2 n.3 (S.D. Fla. Sept. 24, 2008) (concluding that the Eleventh Circuit in *P.E.A.C.H.*

did not adopt and has not since recognized the Ninth Circuit's exceptions to the record

rule)). This Court should likewise find Plaintiffs' misleading references to the "fact that

other circuits may recognize more exceptions to the record rule than the Eleventh

Circuit recognizes [a]s immaterial because this Court is required to follow the decisions

of the Eleventh Circuit." *Coin Ctr.*, 2023 WL 2889736 at *3.

Nonetheless, even if the Eleventh Circuit recognized the technical explanation

exception to the record rule, Plaintiffs' proffered declaration by Dr. Shoemaker does not

qualify under that exception. Here, again, *Coin Center* is instructive. Just like the

proffered declaration in that case, rather than offering purely "objective background

information and explanation" of technical terms and complex subjects, *id.*, nearly every

paragraph of Dr. Shoemaker's proffered declaration in this case expresses

argumentative advocacy that goes straight to Plaintiffs' ultimate views on the merits —

that the gopher tortoise should be listed under the ESA across its entire range. *See, e.g.*, Shoemaker Decl. ¶ 16 (identifying "inconsistencies between how the simulation model works and USFWS's own findings"); ¶ 25 (explaining his opinion that the gopher tortoise is "much more prone to extinction than indicated by the model"); ¶ 27 (bringing in his own schematics and alternate modeling technique); ¶ 30 (describing post-decisional "modifications" he made to the "flawed" PVA model to result in an "extremely consequential" decline in rangewide abundance); ¶ 32 (expressing his opinion that the Service's ultimate conclusions are incorrect). Plaintiffs plainly offer this declaration to improperly challenge the propriety of the agency's not warranted findings, rather than to provide the Court with objective technical information. *Cf. Envtl. Def. Fund v. Costle*, 657 F.2d 275, 286 (D.C. Cir. 1981) ("A judicial venture outside the record can . . . never, under *Camp v. Pitts*, examine the propriety of the decision itself."); *Jewell*, 747 F.3d at 603-04 (admonishing district court for improperly creating a "battle of the experts" by admitting and relying on plaintiffs' post-hoc extra-record declarations to judge the merits of the agency's decision). Accordingly, there is no legal basis for supplementing the administrative record with Plaintiffs' declaration.

## II.  The Administrative Record Contains All the Information This Court Needs to Review the Service's Decision.

In addition to Plaintiffs failing to show a legal reason to supplement the administrative record with the declaration, there is no practical need for it either. The amended administrative record in this case is more than sufficient to allow the Court to conduct a thorough review of the Service's decision at the summary judgment stage. The Service's administrative record contains thousands of pages explaining how the

Service made its determination on the gopher tortoise listing status, including detailed descriptions of the PVA model.

Plaintiffs' motion expresses unnecessary concern about whether the administrative record provides "the complex, technical explanation of how the PVA model design influenced informational inputs to produce future population projections." Mot. at 3. That explanation can be found in the SSA Report at chapter 5 subsection 1. *See* FWS_003442-57. At Chapter 5.1.2 of the SSA Report, the Service listed the different demographic parameters it used for the PVA model—including recruitment (FWS_003444-45), maturity age (FWS_003445), survival rate (FWS_003445-46), immigration (FWS_003446), and initial population size (FWS_003446-48)—and noted any assumptions it made about those parameters or shortcomings in the available data. Chapter 5 of the SSA Report also includes citations to the references that the Service relied on in support of its methodology. For more in-depth details about the formulas and scientific rationale incorporated into the model's structure, one need look no further than the primary source located at Appendix B of the SSA Report, which is a paper written by quantitative ecologist and population biologist Dr. Brian Folt describing the analytical framework for gopher tortoise population modeling that the Service used in reaching its listing determination. *See* FWS_003523.

As to the two aspects of the PVA model specifically challenged by Plaintiffs' proffered declaration, the administrative record explains its methodology. Regarding immigration, Appendix B describes how the formula for number of immigrants was developed, how landscape populations were defined, and what constraints were applied. FWS_003529-33. Regarding maturation rate by juvenile age class, Appendix B

explains how the formula for calculating the probability that a juvenile will transition to adulthood was created and notes the assumptions in the formula. FWS_003527-38.

Additionally, the amended administrative record "adequately explain[s] whether the informational inputs and the model's design align with the best available science about the gopher tortoise and its threats." Mot. at 3.[4] The administrative record reflects the Service's efforts to gather and evaluate the best available science. For example, the record includes over 100 studies and reports reviewed by the Service in making its decision. *See generally* FWS_003714-011569. The Court does not need Plaintiffs' proffered declaration from a third-party researcher to determine whether the Service adequately explained the model used in its decision-making.

Importantly, the materials in the amended administrative record were before the agency decision-makers at the time they made their decision. Plaintiffs' declaration offering new "modifications to the SSA model," Shoemaker Decl. ¶ 30, and signed on June 26, 2024, clearly post-dates the Service's decision, rendering it irrelevant to judicial review of whether the agency used the best science *available at the time*.[5] *See Overton Park*, 401 U.S. at 420; *Camp*, 411 U.S. at 142.

### III. If Any Clarification Is Deemed Necessary, It Should Come from the Service.

Even if Plaintiffs had shown that the Eleventh Circuit applies the technical explanation exception and made a strong showing that the Service's administrative

---

[4] At this stage, the pertinent issue is whether the Court needs extra-record material to review the agency's decision-making. Plaintiffs' motion tees up their underlying argument attacking whether the inputs and model's design do in fact align with the best available science, but that should be considered by the Court at summary judgment.

[5] If Plaintiffs believe the Service should reconsider its decision based on the post-decisional information raised by Dr. Shoemaker, Plaintiffs can submit a new petition for listing to the Service. *See* 50 C.F.R. § 424.14(c).

record requires further technical explanation (neither of which they have shown), it is well established that if a court needs any further explanation to aid in understanding the agency's decision, the court should seek such explanation from the *agency*, not Plaintiffs or their declarants. *See Camp*, 411 U.S. at 142-43 ("If . . . there was such failure to explain administrative action as to frustrate effective judicial review, the remedy [is] not to hold a *de novo* hearing but . . . to obtain from the agency, either through affidavits or testimony, such additional explanation of the reasons for the agency decision as may prove necessary."); *Overton Park*, 401 U.S. at 420 ("[T]he court may require the administrative officials who participated in the decision to give testimony explaining their action" when this is "the only way there can be effective judicial review.").

Plaintiffs themselves cite to two district court cases where the courts needed further technical clarification and sought extra-record testimony from the defendant agencies.[6] For example, in *Sierra Club v. U.S. Forest Service*, the court allowed extra-record evidentiary hearing testimony from U.S. Forest Service representatives to clarify the technical terms "inventory" and "population inventory information" as used in the agency's practice. 535 F. Supp. 2d 1268, 1291, 1292 (N.D. Ga. 2008). In *Miccosukee Tribe of Indians v. United States*, the court considered depositions taken of defendant agencies' employees "because they provide[d] a better explanation of the [Environmental Protection Agency's] decision, and because they helped clarify complex, technical terms dealing with water quality criteria." No. 95-0533-CIV-DAVIS, 1998 WL

---

[6] Plaintiffs' reliance on these cases to support the consideration of their argumentative, third-party declaration is misguided and out of line with the Supreme Court's holdings in *Camp* and *Overton Park*. *See* Mot. at 8-9.

1805539 at *15 (S.D. Fla. Sept. 14, 1998). Here, Plaintiffs' proffered declaration provides a conflicting opinion on the merits, rather than technical clarifications, so it would not qualify under a technical explanation exception. But even if it did purely clarify technical terms, Plaintiffs' third-party declaration would not be the appropriate tool for the Court to use in reviewing the agency's decision-making. Instead, any further explanation is reserved for the agency at the Court's discretion.

## CONCLUSION

Plaintiffs' post-decisional, extra-record declaration does not meet the narrow circumstances required to justify supplementing the Service's administrative record. Plaintiffs have not made a strong showing of bad faith or improper behavior by the agency, and all the information necessary to review the agency's decision is already contained in the administrative record. If this Court decides that further clarification is necessary, the explanation should come directly from the Service, not the Plaintiffs. For all the reasons explained above, the Court should deny Plaintiffs' Motion to Supplement the Administrative Record.

DATE: July 19, 2024                 Respectfully Submitted,

                                    TODD KIM, Assistant Attorney General
                                    U.S. Department of Justice
                                    Environment & Natural Resources Division
                                    S. JAY GOVINDAN, Section Chief
                                    NICOLE M. SMITH, Assistant Section Chief

                                    */s/ Taylor A. Mayhall*
                                    TAYLOR A. MAYHALL
                                    Trial Attorney (MN Bar No. 0400172)
                                    Wildlife & Marine Resources Section
                                    P.O. Box 7611
                                    Washington, D.C. 20044-7611
                                    Tel: (202) 598-3796

Taylor.mayhall@usdoj.gov

*Counsel for Defendants*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 19, 2024, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. Counsel of record currently identified on the Mailing Information list to receive e-mail notices for this case are served via Notices of Electronic Filing generated by CM/ECF.

<u>/s/ *Taylor A. Mayhall*</u>
TAYLOR A. MAYHALL